**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

NORTHFIELD INSURANCE
COMPANY,

Plaintiff,

v.

M. WADD CORPORATION, et al.,

Defendants.

CIVIL ACTION NO. 3:24-CV-01210

(MEHALCHICK, J.)

**MEMORANDUM**

Plaintiff Northfield Insurance Company ("Northfield") initiated this action on July 22, 2024, by filing a complaint against Defendants M. Wadd Corporation d/b/a the Hayloft Tavern and Grill (the "Hayloft"), Mark C. Waddington ("Mr. Waddington"), Marry Anne Waddington ("Mrs. Waddington"), Reed Shave ("Shave"), Gary Edward Engstrom ("Engstrom") and Paige Lynn Scully ("Scully") (collectively, "Defendants"). (Doc. 1). Northfield also named interested party Corrine N. Rodriguez ("Rodriguez") as administratrix of the Estate of Abree Arlene Engstrom (the "Decedent"). (Doc. 1). Before the Court are Northfield and the Hayloft's motions for summary judgment. (Doc. 27; Doc. 32). For the following reasons, Northfield's motion will be granted, and the Hayloft's motion will be denied.

**I.     BACKGROUND AND PROCEDURAL HISTORY**

The following background is taken from the parties' joint stipulation of undisputed facts. (Doc. 28). The Hayloft is a Pennsylvania business located in Lawton, Pennsylvania. (Doc. 28, ¶¶ 2, 10). Northfield is an Iowa insurance company which insured the Hayloft under policy WS410910 (the "Policy"). (Doc. 28, ¶¶ 1, 6). Scully is an individual residing in

Scranton, Pennsylvania. (Doc. 28, ¶ 3). On April 9, 2024, Rodriguez filed an action, both individually and as administratrix of the estate of the Decedent, in the Lackawanna Court of Common Pleas (the "Underlying Action"). (Doc. 28, ¶ 8). In the state court complaint (the "Underlying Complaint"), Rodriguez alleges that the Hayloft overserved Scully alcoholic beverages. (Doc. 1-3, ¶ 3). Rodriguez further alleges that the Decedent, Scully's four-year-old daughter, was also a patron of the Hayloft, and the Hayloft permitted Scully to leave the establishment with the Decedent. (Doc. 1-3, ¶¶ 2, 4-5). According to the Underlying Complaint, because of the Hayloft overserving Scully, Scully was in a car accident while driving the Decedent and this accident resulted in the Descendant's death. (Doc. 1-3, at 1-5; Doc. 28, ¶¶ 12, 14). The car accident occurred approximately one mile from the Hayloft. (Doc. 28, ¶ 13).

In September 2022, the Hayloft sent Northfield a notice of claim presented by the estate of the Decedent under the Policy. (Doc. 28, ¶ 15). On or about September 15, 2022, Northfield issued a letter to the Hayloft and Mrs. Waddington disclaiming coverage under the Policy for claims asserted by the Decedent's estate. (Doc. 28, ¶ 16). Subject to a full reservation of rights, including its position that the Policy does not provide coverage for the allegations asserted in the Underlying Complaint, Northfield has provided and continues to provide courtesy defense to the Hayloft, Mr. Waddington, Mrs. Waddington, and Shave in the Underlying Action. (Doc. 28, ¶ 18).

On November 3, 2025, Northfield filed a complaint seeking declaratory relief declaring that it is not required to defend or indemnify Defendants in the Underlying Action under the Policy. (Doc. 1). Defendants filed counterclaims requesting declaratory relief declaring that Northfield has an obligation to defend Defendants in the Underlying Action under the Policy.

2

(Doc. 16; Doc. 17; Doc. 19; Doc. 20). On August 1, 2025, Northfield filed a motion for summary judgment along with a brief in support. (Doc. 27; Doc. 29). Also on August 1, 2025, the parties filed a stipulation as to the relevant facts in this matter. (Doc. 28). On September 5, 2025, the Hayloft filed a motion for summary judgment on its crossclaim along with a brief in support which both responded to Northfield's motion and supported the Hayloft's motion. (Doc. 32; Doc. 33). On February 11, 2026, Northfield filed a brief in opposition to the Hayloft's motion. (Doc. 40). On February 24, 2026, the Hayloft filed a reply brief. (Doc. 42).

## II.    LEGAL STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" if the evidence "is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. In deciding a summary judgment motion, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir. 1994). However, a party opposing a summary judgment motion must comply with Local Rule 56.1, which specifically directs the oppositional party to submit a "statement of the material facts, responding to the numbered paragraphs set forth in the statement required [to be filed by the movant], as to which it is contended that there exists a genuine issue to be tried"; if the nonmovant fails to do so, "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted." *See* M.D. Pa. L.R. 56.1.

A federal court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 278 (3d Cir. 2000). In deciding a motion for summary judgment, the court's function is not to make credibility determinations, weigh evidence, or draw inferences from the facts. *Anderson*, 477 U.S. at 249. Rather, the court must simply "determine whether there is a genuine issue for trial." *Anderson,* 477 U.S. at 249.

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion," and demonstrating the absence of a genuine dispute of any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant makes such a showing, the non-movant must go beyond the pleadings with affidavits or declarations, answers to interrogatories, or the like, to demonstrate specific material facts which give rise to a genuine issue. Fed. R. Civ. P. 56(c); *Celotex,* 477 U.S. at 324. The non-movant must produce evidence to show the existence of every element essential to its case, which it bears the burden of proving at trial, because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex,* 477 U.S. at 323. Furthermore, mere conclusory allegations and self-serving testimony, whether made in the complaint or a sworn statement, cannot be used to obtain or avoid summary judgment when uncorroborated and contradicted by other evidence of record. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990); *see also Thomas v. Delaware State Univ.,* 626 F. App'x 384, 389 n.6 (3d Cir. 2015) (nonprecedential) ("[U]nsupported deposition testimony, which is contradicted by the record, is insufficient to defeat summary judgment");

*Nat'l Labor Rel. Bd. v. FES*, 301 F.3d 83, 95 (3d Cir. 2002) ("[The plaintiff's] testimony. . . amounts to an unsupported, conclusory assertion, which we have held is inadequate to satisfy the movant's burden of proof on summary judgment").

III.    DISCUSSION

Northfield and the Hayloft stipulated to the relevant facts in this matter and Northfield and Hayloft both move for summary judgment regarding whether the Policy does or does not provide coverage for Defendants. (Doc. 28; Doc. 27; Doc. 32). According to Northfield, the Underlying Action is outside of the scope of the Policy because the Policy clearly and unambiguously limits coverage to bodily injury and property damage which occurs on the Hayloft's premises and excludes liability for bodily injury or property damages caused by overserving alcohol. (Doc. 29, at 15-26). Northfield avers that it is entitled to summary judgment because the relevant accident occurred approximately one mile from the Hayloft and involves the alleged overserving of alcohol. (Doc. 29, at 15-26). The Hayloft counters that the provision limiting coverage to liability for bodily injury which occurs on the Hayloft's premises is ambiguous and the Court must side with the insured where a policy is ambiguous. (Doc. 33, at 13-19). The Hayloft further argues that the Policy's alcohol exemption does not cover the Underlying Action because parts of the Underlying Complaint are not related to the overserving of alcohol. (Doc. 33, at 19-26).

Under Pennsylvania law, insurance policy contracts create both a duty for the insurer to defend the insured and a duty to indemnify the insured. *See Post v. St. Paul Travelers Ins. Co.*, 691 F.3d 500, 517 (3d Cir. 2012) (discussing the distinctions between the duty to defend and the duty to indemnify). "[A]n insurer's duty to defend is broader than its duty to indemnify." *Post*, 691 F.3d at 517. The insurer has a duty to defend the insured against an underlying

5

action where "'the factual allegations of the complaint on its face encompass an injury that is actually or *potentially* within the scope of the policy." *Am. & Foreign Ins. Co.*, 606 Pa. at 609 (emphasis added). By contrast, an insurer only has a duty to indemnify where the insurance policy "'*actually* covers a claimed incident.'" *State Farm Fire & Cas. Co. v. DeCoster*, 67 A.3d 40, 46 (Pa. Super. Ct. 2013) (emphasis in original) (quoting *Am. States Ins. Co. v. State Auto Ins. Co.*, 721 A.2d 56, 63 (Pa. Super. Ct. 1998)). The question of whether an insurer has a duty to indemnify is generally not ripe until after the insured is held liable in an underlying action, but "a duty to indemnify cannot exist without a duty to defend." *Permanent Gen. Ins. Corp. of Ohio v. McDevitt*, 612 F. Supp. 3d 422, 426 (E.D. Pa. 2020). Although the duties to defend and indemnify are distinct, courts evaluate both by interpreting the relevant insurance policy. *See Am. & Foreign Ins. Co., Inc.*, 606 Pa. at 609.

"[T]he interpretation of the scope of coverage of an insurance contract is a question of law properly decided by the court." *Med. Protective Co. v. Watkins*, 198 F.3d 100, 103 (3d Cir. 1999); *see Beazley Underwriting, LTD v. Max & Mia Reality, LLC*, 792 F. Supp. 3d 543, 548 (M.D. Pa. 2025). To determine whether an insurance policy covers an underlying action, the Court must compare "the four corners of the insurance contract to the four corners of the [underlying] complaint." *Am. & Foreign Ins. Co.*, 606 Pa. at 609; *see See Post*, 691 F.3d at 517. The Court must assume that the allegations in the underlying complaint are true when comparing the complaint to the insurance policy. *See Post*, 691 F.3d at 517.

"In interpreting an insurance policy, a court must ascertain the intent of the parties as manifested by the language of the written agreement." *Stevens Painton Corp. v. First State Ins. Co.*, 746 A.2d 649, 657 (Pa. Super. Ct. 2000). Where "the language of the contract is clear and unambiguous, a court is required to give effect to that language." *Standard Venetian Blind Co.*

6

*v. Am. Empire Ins. Co.*, 503 Pa. 300, 305 (1983); *see Beazley Underwriting, LTD*, 792 F. Supp. 3d at 548 (stating "the court must enforce the plain language of the policy if its terms are clear and unambiguous"). However, "[w]here a provision of a policy is ambiguous, the policy provision is to be construed in favor of the insured and against the insurer, the drafter of the agreement." *Standard Venetian Blind Co.*, 503 Pa. at 305; *see Beazley Underwriting, LTD*, 792 F. Supp. 3d at 548. "Courts interpret coverage clauses broadly 'to afford the greatest possible protection to the insured,' and, accordingly, they interpret exceptions to an insurer's general liability narrowly against the insurer." *Verticalnet, Inc. v. U.S. Specialty Ins. Co.*, 492 F. Supp. 2d 452, 456 (E.D. Pa. 2007) (quoting *Westport Ins. Corp. v. Bayer*, 284 F.3d 489, 498 (3d Cir. 2002)); *see Beazley Underwriting, LTD*, 792 F. Supp. 3d at 548. Where a policy includes an exemption to coverage, the insurance company bears the burden of showing the exemption applies. *See Empire Fire & Marine Ins. Co. v. Jones*, 739 F. Supp. 2d 746, 762 (M.D. Pa. 2010).

The Policy here provides:

1. Insuring Agreement.

> a. [Northfield] will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. [Northfield] will have the right and duty to defend the insured against any "suit" seeking those damages. However, [Northfield] will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply . . .

> b. This insurance applies to "bodily injury" and "property damage" only if:

>> (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

>> (2) The "bodily injury" or "property damage" occurs during the policy period; and

>> (3) Prior to the policy period, no insured . . . and no "employee" authorized by [the Hayloft] to give or receive notice of an "occurrence"

7

or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part . . .

(Doc. 33-1, at 20).

Under the Policy's definitions, Coverage Territory includes "[t]he United States of America (including its territories and possessions), Puerto Rico, and Canada." (Doc. 33-1, at 31). The Policy also contains an endorsement entitled "LIMITATION OF COVERAGE TO DESIGNATED PREMISES, PROJECT OR OPERATION" (the "Premises Endorsement"). (Doc. 33-1, at 67). The top of the Premises Endorsement reads "THIS ENDOREMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY." (Doc. 33-1, at 67) The Premises Endorsement provides:

1. Paragraph **1.b.** under Section 1 - Coverage A - **Bodily Injury And Property Damage Liability** is replaced by the following:

b. This insurance applies to "bodily injury" and "property damage" caused by an "occurrence" that takes place in the "coverage territory" only if:

(1) The "bodily injury" or "property damage":

(a) Occurs on the premises shown in the Schedule or the grounds and structures appurtenant to those premises; or

(b) Arises out of the project or operation shown in the Schedule;

(2) The "bodily injury" or "property damage" occurs during the policy period; and

(3) Prior to the policy period, no insured . . . and no "employee" authorized by [the Hayloft] to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part . . .

(Doc. 33-1, at 67).

The Premises Endorsement also modifies the Schedule to state that premises is defined as "All Covered Locations as Scheduled on the Declarations" and states "Project or Operation: Not Applicable." (Doc. 33-1, at 67). The Policy's "Commercial General Liability

8

Coverage Part Declarations" contain a section entitled "Address of All Premises" which only lists 10774 State Route 267, Lawton, Pennsylvania, 18828. (Doc. 33-1, at 18). The Policy also has another endorsement entitled "EXCLUSION - LIQUOR - ABSOLUTE" (the "Liquor Endorsement"). (Doc. 33-1, at 73). The Liquor Endorsement adds an exclusion to the Policy for the following liability:

> c. Liquor Liability
>
>> "Bodily injury" or "property damage" for which any insured may be held liable by reason of:
>>
>> (1) Causing or contributing to the intoxication of any person, including causing or contributing to the intoxication of any person because alcoholic beverages were permitted to be brought on your premises for consumption on your premises;
>>
>> (2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or
>>
>> (3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.
>
> (Doc. 33-1, at 73).

The Underlying Complaint alleges that on November 18, 2020, Scully crashed her car in the 5900 Block of State Route 367, Lawton, Pennsylvania, while driving home from the Hayloft. (Doc. 1-3, ¶ 1). This crash resulted in the Decedent's death. (Doc. 1-3, ¶ 1). According to the Underlying Complaint, prior to the accident, the Hayloft, a restaurant, by and through its employees, overserved Scully alcoholic beverages while she and the Decedent were business invitees at the Hayloft and while Scully was visibly intoxicated. (Doc. 1-3, ¶¶ 30-35). The Underlying Complaint alleges that Defendants are liable for negligence, premises liability, negligent training and supervision, permitting improper persons to engage in activities, failure to protect, and negligent entrustment. (Doc. 1-3, ¶¶ 112-96, 204-13). The Underlying Complaint also brings a survival action. (Doc. 1-3, ¶¶ 197-203).

9

The parties agree that the car accident occurred approximately one mile away from the Hayloft, but dispute whether the Policy would cover bodily injury a mile outside of the Hayloft's premises. (Doc. 28, ¶ 13; Doc. 29, at 16-20; Doc. 33, at 14-19). According to Northfield, the Premises Endorsement unambiguously modifies the Policy so that it only applies to bodily injuries or property damage which occurs on the Hayloft's premises. (Doc. 29, at 16-20). The Hayloft argues, relying on caselaw from Florida federal courts, that the Policy is a general liability policy which covers all liability for bodily injuries occurring in North America, and the Premises Endorsement does not "clearly and unequivocally convert the commercial general liability policy into a premises liability policy." (Doc. 33, at 14-19). The Hayloft further avers that the Policy's Schedule is ambiguous as to what the Hayloft's premises are. (Doc. 33, at 17).

The Court agrees with Northfield that the Premises Endorsement limits liability to the Hayloft's premises. (Doc. 29, at 16-20). Under Pennsylvania law, an endorsement is an enforceable part of an insurance policy that modifies the terms of the policy so long as the Court can ascertain, based on the text of the endorsement, that the parties intended to change the terms of the policy. *See Tuscarora Wayne Mut. Ins. Co. v. Kadlubosky*, 889 A.2d 557, 561 (Pa. Super. Ct. 2005) (finding that an endorsement limited liability to the insured's premises); *see also Whole Enchilada, Inc. v. Travelers Prop. Cas. Co. of Am.*, 581 F. Supp. 2d 677, 692 (W.D. Pa. 2008) (stating "[u]nder Pennsylvania law, an endorsement 'will be considered part of the insurance contract if it appears that the parties intended that is should be so considered'" (quoting *Young v. U. S. Fid. & Guar. Co.*, 445 A.2d 542, 544 (Pa. Super. Ct. 1982)). "[T]he Court must read the endorsement as part of the contract between the parties. When there is a conflict between the terms of the policy and the endorsement, the endorsement will prevail."

*Whole Enchilada, Inc.*, 581 F. Supp. 2d at 693 (citations omitted); *see also St. Paul Fire & Marine Ins. Co. v. U.S. Fire Ins. Co.*, 655 F.2d 521, 524 (3d Cir. 1981) (noting that an endorsement prevails where it conflicts with the body of the policy); *see also U.S. Fire Ins. Co. v. Kelman Bottles*, 538 F. App'x 175, 180 (3d Cir. 2013) (nonprecedential) (noting the same).

The plain text of the Premises Endorsement clearly shows that the parties intended to change the terms of the Policy because it states in large capital letters that "THIS ENDORSMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY." (Doc. 33-1, at 67); *see Whole Enchilada, Inc.*, 581 F. Supp. 2d at 692 (finding that an endorsement is clearly intended to change an insurance policy where it unambiguously stated as much). The Premises Endorsement further states that it changes the Policy so that coverage only applies to bodily injury that "[o]ccurs on the premises shown in the Schedule or the grounds and structures appurtenant to those premises" or that "arises out of the project or operation shown in the schedule." (Doc. 33-1, at 67). The Premises Endorsement's modification to the Schedule indicates that there is no project or operation covered by the Policy and the only premises listed in the Policy's Declarations is the Hayloft's location at 10774 State Route 267, Lawton, Pennsylvania, 18828. (Doc. 33-1, at 18, 67). Courts applying Pennsylvania law have enforced similar clauses limiting liability to a designated premises. *See Tuscarora Wayne Mut. Ins. Co.*, 889 A.2d at 561 (finding that an endorsement stating "[t]his insurance applies only to 'bodily injury,' 'property damage,' 'personal injury,' 'advertising injury' and medical expenses arising out of . . .[t]he ownership, maintenance or use of the premises shown in the Schedule" excluded coverage for bodily injury which occurred away from the designated premises); *see also Foremost Ins. Co. v. Steele*, No. 3:24-CV-00684, 2025 WL 1689403, at *3 (M.D. Pa. June 16, 2025) (finding a policy "extend[ed] coverage only to . . . that occurs on

11

premises listed on the policy's Declarations page" because the policy stated that it would only cover "damages because of bodily injury or property damage, caused by an accident on your premises"); *see also Foremost Ins. Agency, Grand Rapids, Michigan v. Himmel*, No. 1:09-CV-2575, 2012 WL 13001585, at *6 (M.D. Pa. June 1, 2012) (finding that a policy only applied to a designated premises because the policy stated "WE'LL pay up to the Limit of Liability all sums YOU legally must pay as damages because of bodily injury or property damage caused by an accident and occurring on YOUR premises as described in the Schedule" and noting that the policy only described one premises). Accordingly, the Court agrees with Northfield that the Policy only applies to bodily injury which occurred at the Hayloft and does not cover the car accident described in the Underlying Complaint which occurred approximately one mile away from the Hayloft. (Doc. 28, ¶ 13); *see Tuscarora Wayne Mut. Ins. Co.*, 889 A.2d at 561; *see also Steele*, 2025 WL 1689403, at *3; *see also Himmel*, 2012 WL 13001585, at *6.

In opposition, the Hayloft argues that whether the Policy is limited to premises liability is ambiguous because while the Premises Endorsement appears to limit liability, the body of the Policy repeatedly indicates that the policy is intended to provide general liability insurance for the risks associated with running a restaurant. (Doc. 33, at 14-19). However, these contradictions do not render the Policy ambiguous. Under Pennsylvania law, where an endorsement, like the Premises Endorsement, clearly indicates that the parties intended to modify a policy, the endorsement's language applies instead any contradictory language from the policy's body.[1] *See Whole Enchilada, Inc.*, 581 F. Supp. 2d at 693; *see also St. Paul Fire &*

---

[1] The Florida law the Hayloft relies on is contradictory to Pennsylvania law, and thus inapplicable. (Doc. 33, at 14-19). The Hayloft relies heavily on *Contessa v. White Pine Ins. Co.*, No. 3:23-CV-00487, 2024 WL 4221699 (M.D. Fla. Sept. 16, 2024). (Doc. 33, at 15-19). *Contessa* is at odds with Pennsylvania law because in *Contessa*, the Middle District of Florida

*Marine Ins. Co.*, 655 F.2d at 524; *see also Kelman Bottles*, 538 F. App'x at 180. Thus, applying Pennsylvania law, the Court finds that the Premises Endorsement limits liability to bodily injuries which occurred at the Hayloft's physical address at 10774 State Route 267, Lawton, Pennsylvania, 18828 and does not cover bodily injuries which occurred approximately one mile away. (Doc. 28, ¶ 13; Doc. 33-1, at 18, 67).

However, even if the Policy was not limited to bodily injury which occurred on the Hayloft's premises, the Policy does not cover the Underlying Action because of the Liquor Endorsement. (Doc. 33-1, at 73). The Liquor Endorsement states that the Policy does not cover "'Bodily injury' . . . for which any insured may be held liable by reason of . . . [c]ausing or contributing to the intoxication of any person" or "[t]he furnishing of alcoholic beverages to a person . . . under the influence of alcohol." (Doc. 33-1, at 73). Courts have found similar clauses enforceable under Pennsylvania law. *See Transportation Ins. Co v. Heathland Hosp. Grp. LLC*, 783 F. App'x 186, 189 (3d Cir. 2019) (nonprecedential) (affirming a district court's finding that a clause limiting alcohol-related liability was enforceable); *see also State Auto. Mut. Ins. Co. v. Lucchesi*, No. 4:11-CV-0735, 2012 WL 2009355, at *1 (M.D. Pa. June 5, 2012), *aff'd*, 563 F. App'x 186 (3d Cir. 2014) (enforcing a clause limiting alcohol-related liability).

Where an insurance policy contains a provision limiting liability related to serving alcohol, the Court must review the underlying complaint to determine if the underlying action

---

found that the policy in question was ambiguous under Florida law because "the Endorsement is the policy's only mention of limiting coverage to the premises and contradicts the references throughout to general liability coverage." 2024 WL 4221699, at *5. If Pennsylvania law were applied in *Contessa*, the court would have applied the language in the endorsement over the language in the body rather than finding ambiguity due to the contradictions. *See Whole Enchilada, Inc.*, 581 F. Supp. 2d at 693; *see also St. Paul Fire & Marine Ins. Co.*, 655 F.2d at 524; *see also Kelman Bottles*, 538 F. App'x at 180.

13

is "inextricably intertwined with the negligent provision of alcohol; where the claims of negligence are inextricably intertwined with—or not sufficiently independent of—the provision of alcohol, the liquor liability exclusion will bar coverage." *Lucchesi*, 2012 WL 2009355, at \*5 (citations and internal quotations omitted) (finding that a provision limiting coverage in cases involving alcohol prevented coverage for an underlying action where a plaintiff alleged the bar overserved a patron and allowed him to leave the bar intoxicated after which he was hit by a car); *see also Heathland Hosp. Grp. LLC*, 783 F. App'x at 188 (finding that a provision limiting coverage excluded coverage for an underlying action involving a decedent whom the defendants allegedly overserved and allowed to get into a car before he crashed). When making this determination, the Court must consider whether the factual basis for the claims is inextricably linked to serving alcohol and not how the plaintiff in the underlying action labels their claims. *See Lucchesi*, 2012 WL 2009355, at \*5 (stating "[i]n determining whether a liquor liability exclusion applies, the Court must look to the factual averments in the complaint and may not rely simply on the labels applied to those averments"); *see also AIX Specialty Ins. Co. v. Am. Legion Dep't of Pennsylvania*, No. CV 21-2338, 2022 WL 767834, at \*10 (E.D. Pa. Mar. 14, 2022) (noting the same and finding that a clause limiting liability regarding alcohol did not apply because although part of the underlying plaintiff's claim related to overserving alcohol, that plaintiff also alleged the defendant was negligent in permitting an individual to enter a bar with a gun). Where the basis for a claim is a defendant allegedly overserving alcohol and allowing a clearly intoxicated patron to leave, the liquor exclusion applies regardless of how the claim is labeled. *See Heathland Hosp. Grp. LLC*, 783 F. App'x at 188; *see also Lucchesi*, 2012 WL 2009355, at \*5

14

The Underlying Complaint is inextricably linked to Defendants allegedly overserving alcohol because the Underlying Complaint alleges that the Hayloft and its employees were negligent in overserving Scully despite her being visibly intoxicated and by allowing her to leave the Hayloft with the Decedent despite Scully being visibly intoxicated. (Doc. 1-3, ¶¶ 30-35). Courts have found identical language to that found in the Policy to exclude liability for similar claims. *See Heathland Hosp. Grp. LLC*, 783 F. App'x at 189 (finding a policy excluded liability for claims related to overserving a patron alcohol and allowing them to leave visibly intoxicated); *see also Lucchesi*, 2012 WL 2009355, at *5 (finding the same). The Hayloft avers that the Liquor Endorsement does not apply because Count II of the Underlying Action is entitled "Negligent/Premises Liability" and alleges that Defendants are liable for failing to prevent the Decedent from leaving with Scully, who was in a "dangerously wild, erratic, and inebriated condition." (Doc. 33, at 22-23). The Hayloft cites *AIX Specialty Ins. Co. v. Am. Legion Dep't of Pennsylvania*, No. CV 21-2338, 2022 WL 767834, at *10 (E.D. Pa. Mar. 14, 2022) and *Penn-Am. Ins. Co. v. Peccadillos, Inc.*, 27 A.3d 259, 268 (Pa. Super. Ct. 2011) to argue that while part of the Underlying Action's claims involve the overserving of alcohol, Count II is not inextricably linked from serving alcohol. (Doc. 33, at 19-23). However, both cases are readily distinguishable. *AIX Specialty Ins. Co.* involved allegations that a bar was negligent in both overserving a patron and for not taking away the patron's gun despite conducting pat downs. 2022 WL 767834, at *10. The court found that the allegations regarding the gun were distinct from the allegations regarding overserving. *AIX Specialty Ins. Co.*, 2022 WL 767834, at *10. Similarly, in *Peccadillos, Inc.*, the court found that the underlying action did not solely involve an establishment overserving a patron and allowing them to leave intoxicated, but rather, involved an establishment failing to call the police after patrons got into a fight and then

ejecting the patrons who fought from the bar while they were inebriated and irrational. 27 A.3d at 268. The Underlying Action here, by contrast, alleges that Defendants were negligent for overserving Scully and allowing her to leave with the Decedent despite her "inebriated condition." (Doc. 1-3, ¶¶ 30-111, 135). Count II explicitly references the Defendants overserving Scully because it alleges that a bartender at the Hayloft stated that she continued to serve Scully alcohol and allowed her to leave with the Decedent because she "needed to make money too." (Doc. 1-3, ¶ 140). According to the Underlying Complaint's allegations in Count II, "[a]fter [a bartender was] expressly warned of the unreasonable risk of imminent harm that [the Decedent] was placed in in due to the condition of its patron, Scully, the Hayloft's bartender permitted Scully to become even more dangerous to both herself and [the Decedent]" by continuing to serve Scully alcoholic beverages and permitting Scully and the Decedent to leave together. (Doc. Doc. 1-3, ¶ 140). Thus, the Underlying action is analogous to cases in which courts have found liquor exclusions prevented coverage. *See Heathland Hosp. Grp. LLC*, 783 F. App'x at 189; *see also Lucchesi*, 2012 WL 2009355, at *5. The Court finds that the Policy does not create a duty to defend the Underlying Action both because of the Premises Endorsement and because of the Liquor Endorsement. (Doc. 33-1, at 67, 73). Because the Policy does not create a duty to defend, it also does not create a duty to indemnify. *See Permanent Gen. Ins. Corp. of Ohio*, 612 F. Supp. 3d at 426. Northfield's motion for summary judgment (Doc. 27) is **GRANTED** and the Hayloft's motion is **DENIED**. (Doc. 32).

IV.    CONCLUSION

For the foregoing reasons, Northfield's motion for summary judgment (Doc. 27) is **GRANTED** and the Hayloft's motion (Doc. 32) is **DENIED**. Defendants' counterclaims are **DISMISSED**. (Doc. 16; Doc. 17; Doc. 19; Doc. 20). Judgment is entered in favor of

16

Northfield and against Defendants. The Policy does not create any obligation on behalf of Northfield to defend or indemnify Defendants in the Underlying Action. The Clerk of Court is directed to close this action.

An appropriate Order follows.

**BY THE COURT:**

**Dated: February 27, 2026**                    *s/ Karoline Mehalchick*

**KAROLINE MEHALCHICK**
**United States District Judge**